

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00223-CV

_____

ROBERT THARP AND LEE ANN THARP, Appellants

V.

BUILDERS FIRSTSOURCE-TEXAS GROUP, L.P., Appellee

---

On Appeal from County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2018-002164-1

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

This appeal involves a discrete question of statutory construction concerning Chapter 53 of the Texas Property Code, which governs the assertion and enforcement of mechanic's liens. *See generally* Tex. Prop. Code Ann. §§ 53.001–.287.[1] Specifically, we must determine whether Property Code Section 53.157 operates to automatically "discharge[] of record" a mechanic's lien if the lienholder fails to timely file suit to foreclose its lien "in the county in which the property is located." *Id.* § 53.157(2). The trial court implicitly held that it does not and signed a summary judgment in the lienholder's favor ordering the foreclosure of its mechanic's lien. Having concluded that the trial court erred, we reverse and render a judgment of dismissal.

## I. BACKGROUND

Appellants Robert and Lee Ann Tharp hired general contractor Kyle Belew and his construction company Veranda Fine Homes, LLC to build them a home in Denton County, Texas. Veranda subcontracted with Appellee Builders FirstSource-Texas Group, L.P. (BFS), which supplied windows for the project in October 2017. The Tharps authorized Veranda to make a draw against their construction loan to cover

---

[1]The Legislature made a few immaterial amendments to Section 53.157 in 2021, but those changes "apply only to an original contract entered into on or after" January 1, 2022, which is well after the occurrence of the events giving rise to this lawsuit. *See* Act of May 28, 2021, 87th Leg. R.S., ch. 690, §§ 22, 37, 2021 Tex. Gen. Laws 1423, 1431, 1436. Thus, the 1997 version is applicable here, and unless otherwise indicated, all citations herein to Section 53.157 refer to the 1997 version. *See* Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 15, 1997 Tex. Gen. Laws 1880, 1884.

BFS's $40,838.05 invoice for the windows, but neither Veranda nor Belew, who had personally guaranteed Veranda's financial obligations to BFS, ever paid it.

In January 2018, BFS filed a lien affidavit in Denton County asserting a statutory mechanic's lien against the Tharps' property.[2] After receiving notice of the lien, the Tharps contacted Belew, who assured them that he would "take care of it," but he never did. The Tharps then contacted BFS and offered to return the windows, but BFS declined.

In April 2018, BFS filed suit in Tarrant County seeking damages against Veranda and Belew and a judgment foreclosing its mechanic's lien.[3] The Tharps answered, generally denied BFS's allegations, and asserted as an affirmative defense that BFS's mechanic's lien had been discharged as a matter of law pursuant to Property Code

---

[2]The Tharps do not dispute that BFS's lien affidavit was timely filed and met all of the statutory content requirements or that BFS took all other necessary steps, including sending proper notices, to perfect its mechanic's lien. *See* Tex. Prop. Code Ann. §§ 53.051–.052, .054–.057.

[3]In its original petition, BFS sought "a judgment of foreclosure" of its "priority lien for removables" and also asserted claims against Veranda for breach of contract, suit on a verified account, violation of the Prompt Payment Act, and the misapplication of trust funds; a claim against Belew for breach of his personal guaranty; and a claim against Veranda, Belew, and the Tharps for quantum meruit. In its first amended petition, BFS dropped its prompt-payment and misapplication-of-trust-funds claims. In its second amended petition, BFS made clear that it sought "a judgment of foreclosure of its mechanic's lien" as well as "an order of sale of the property, and/or an order of foreclosure and removal of the removable materials from the [h]ome."

Section 53.157 "because [BFS] failed to file suit within the prescribed time period in the county in which the property is located."

In July 2020, the trial court granted BFS a default judgment against Veranda and Belew in the amount of $40,838.05 plus prejudgment interest, court costs, and attorney's fees. But BFS's lien-foreclosure and quantum-meruit causes of action against the Tharps remained pending.

In January and February 2021, BFS and the Tharps filed competing summary-judgment motions. The Tharps argued that BFS's mechanic's lien had been discharged of record as a matter of law under Property Code Section 53.157(2) because BFS had filed its foreclosure suit in Tarrant County rather than Denton County—the county in which the Tharps' property is located. *See id.* § 53.157(2). For its part, BFS argued that Section 53.157(2) merely grants a trial court discretion to discharge a lien because it provides that a lien "*may* be discharged of record" by the lienholder's failure to timely file suit to foreclose its lien "in the county in which the property is located." *Id.* (emphasis added). BFS also characterized the Tharps' argument as a venue objection that they had waived by failing to timely move to transfer venue to Denton County and by actively participating in the case for nearly three years. BFS therefore contended that it was entitled to a judgment of foreclosure because its properly perfected mechanic's lien remained valid and enforceable.

In June 2023, the trial court signed a summary judgment that granted BFS's motion and denied the Tharps' motion. The judgment awarded BFS foreclosure of its

4

mechanic's lien and directed "that an order of sale . . . issue to any sheriff or constable in the State of Texas to sell" the Tharps' property.[4] The judgment also awarded BFS attorney's fees in the amount of $11,750 through the date of judgment and unconditional appellate attorney's fees for any appeals to this court or the Texas Supreme Court. This appeal followed.

## II. DISCUSSION

In two issues, the Tharps argue that the trial court erred by (1) granting BFS's summary-judgment motion because BFS's mechanic's lien was discharged of record by its failure to timely file suit to foreclose the lien in Denton County and (2) awarding BFS unconditional appellate attorney's fees. For the reasons set forth below, we sustain the Tharps' first issue and overrule their second issue as moot.

### A. Standard of Review and Applicable Rules of Construction

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accid. Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When both parties move for summary judgment and the trial court grants one and denies the other, we determine all questions presented

---

[4]Although BFS did not move for summary judgment on its quantum meruit claim, the trial court's judgment made clear that it disposed of this claim by including clear finality language providing that it "dispose[d] of all claims against all parties and [was] therefore . . . [f]inal." *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001); *Wright v. Payne*, No. 02-19-00147-CV, 2019 WL 6003243, at *2 (Tex. App.—Fort Worth Nov. 14, 2019, no pet.) (mem. op.).

and render the judgment that the trial court should have rendered. *Mid–Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007).

We also review issues of statutory construction de novo. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (citing *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)). "Our objective in construing a statute is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (quoting *Lippincott*, 462 S.W.3d at 509). If the statute's language is unambiguous, we interpret it according to its plain meaning. *Id.* "We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." *Lippincott*, 462 S.W.3d at 509 (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008)).

## B. BFS's Mechanic's Lien Has Been Discharged of Record as a Matter of Law

The application of the above-referenced statutory-construction rules to Property Code Section 53.157(2) leads to the inexorable conclusion that BFS's mechanic's lien has been discharged of record.

The applicable version of Section 53.157(2) provides:

DISCHARGE OF LIEN. A mechanic's lien or affidavit claiming a mechanic's lien filed under Section 53.052 may be discharged of record by:

. . .

(2) failing to institute suit to foreclose the lien *in the county in which the property is located* within the period prescribed by Section 53.158, 53.175, or 53.208[.]

6

Tex. Prop. Code Ann. § 53.157(2) (emphasis added). The parties agree that Section 53.158(b) applies to BFS's lien and that under that statute, BFS was required to file its foreclosure suit no later than January 15, 2019—one year after the deadline to file a lien affidavit perfecting its mechanic's lien. *Id.* § 53.158(b).[5] Thus, as applicable here, Section 53.157(2) provides that BFS's mechanic's lien "may be discharged of record by . . . failing to institute suit to foreclose the lien in the county in which the property is located" by January 15, 2019. *Id.* § 53.157(2). Because BFS never filed suit in the county in which the Tharps' property is located—Denton County—but instead filed suit in Tarrant County, the statute's plain language dictates that BFS's mechanic's lien has been discharged of record. *See id.* To avoid this seemingly inescapable conclusion, BFS relies on two primary arguments.

First, BFS argues that Section 53.157(2) functions, in essence, as a permissive venue statute and that the Tharps waived the statute's application by failing to timely file a motion to transfer venue to Denton County. Under BFS's reading of the Property Code, Chapter 53 does not require a mechanic's lien claimant to file a foreclosure suit in the county in which the property is located; it merely requires that the suit be filed in a court of competent jurisdiction. *See id.* § 53.154 ("A mechanic's lien may be foreclosed

---

[5]The 1999 version of Section 53.158 applies here, and unless otherwise indicated, all citations to this statute herein refer to that version. *See* Act of May 21, 1999, 76th Leg., R.S., ch. 889, § 4, sec. 53.158(b), 1999 Gen. Laws 3586, 3587. As noted above, *see supra* note 1, the 2021 amendments to Property Code Chapter 53 did not become effective until after the events giving rise to this lawsuit occurred.

only on judgment of a court of competent jurisdiction . . . ."); *see also* Tex. Gov't Code Ann. § 25.2222(b)(7) (providing that a Tarrant County court at law has concurrent jurisdiction with the district court in "suits for the enforcement of a lien on real property"). According to BFS, because all or a substantial part of the events or omissions forming the basis of its foreclosure suit occurred in Tarrant County, Tarrant County is a permissible venue, and even if Section 53.157(2) sets forth a mandatory venue requirement, it has been waived. *See Barcroft v. Walton*, No. 02-16-00110-CV, 2017 WL 3910911, at *2 (Tex. App.—Fort Worth Sept. 7, 2017, no pet.) (mem. op.) ("[V]enue—even mandatory venue—may be waived."); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1).

But treating Section 53.157(2) as a venue statute, as BFS suggests, would require us to "rewrite the statute under the guise of interpreting it," something we cannot do. *In re Ford Motor Co.*, 442 S.W.3d 265, 284 (Tex. 2014) (orig. proceeding). As its title indicates, Section 53.157's focus is the discharge of mechanic's liens, not the appropriate venue of a foreclosure suit, and it enumerates six specific ways in which a mechanic's lien may be discharged. Tex. Prop. Code Ann. § 53.157(1)–(6). By its plain language, Section 53.157(2) provides that one such way is the lienholder's failure to timely "institute suit to foreclose the lien *in the county in which the property is located.*" *Id.* § 53.157(2) (emphasis added). Under BFS's interpretation of Section 53.157(2), a mechanic's lien would not be discharged as long as the lienholder timely filed a foreclosure suit in *any* Texas county. Rather than discharging the lien, a lienholder's

8

failure to file suit in the county in which the property is located would merely grant the property owner a waivable right to seek a venue transfer. Thus, BFS's proposed reading of Section 53.157(2) strains the statutory text beyond what it can bear and fails to give effect to the phrase "in the county in which the property is located." *See Ford Motor Co.*, 442 S.W.3d at 284; *see also In re Guardianship of Gibbs*, 253 S.W.3d 866, 873 (Tex. App.—Fort Worth 2008, pet. dism'd) (op. on reh'g) ("[W]e may not construe a statute in any manner that fails to give effect to all the provisions the legislature enacted or that reduces any provision to mere surplusage.").

BFS implies that Section 53.157(2) must be construed as a permissive venue statute because a straightforward reading of the statutory text would create a conflict with Section 53.154, which provides that "[a] mechanic's lien may be foreclosed . . . on judgment of a court of competent jurisdiction." Tex. Prop. Code Ann. § 53.154. But these statutes can be harmonized without adopting BFS's strained interpretation of Section 53.157(2). The general term "court of competent jurisdiction" necessarily includes courts "in the county in which the property is located" where a lienholder could "institute suit to foreclose [its] lien." *Id.* §§ 53.154, 53.157(2). Thus, read together, these statutes simply require a lienholder to file a foreclosure suit in a "court of competent jurisdiction" located "in the county in which the property is located" by the applicable deadline to avoid having its lien discharged. *See id.* Alternatively, a lienholder can—like BFS—file suit in a "court of competent jurisdiction" in another county, but by doing so, it runs the risk of having its lien discharged if it cannot obtain a judgment

of foreclosure—and successfully foreclose its lien—before the expiration of the time period set forth in Section 53.157(2). *See id.* This reading of Sections 53.154 and 53.157(2) adheres to the plain meaning of the text and gives full effect to the language of both provisions. *See ExxonMobil Pipeline Co.*, 512 S.W.3d at 899; *see also Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 19 (Tex. 2007) (instructing that courts "must . . . consider the statute as a whole and construe it in a manner which harmonizes all of its various provisions" when determining its meaning (citing *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001))).

Next, seizing on Section 53.157's use of the word "may," BFS argues that the statute merely gives a trial court discretion to discharge a mechanic's lien if the lienholder fails to timely file suit in the county in which the property is located—and, by implication, that the trial court here properly exercised its discretion not to discharge BFS's lien. But the rules of statutory construction belie this argument.

The Legislature's use of the word "may" does not always vest a trial court with discretion. *See, e.g., Crawford Servs., Inc. v. Skillman Int'l Firm, L.L.C.*, 444 S.W.3d 265, 269 (Tex. App.—Dallas 2014, pet dism'd) (first citing Tex. Gov't Code Ann. § 311.016(1); then citing *Martinez v. Dallas Cent. Appraisal Dist.*, 339 S.W.3d 184, 190–91 (Tex. App.—Dallas 2011, no pet.); and then citing *Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.*, 212 S.W.3d 665, 671 (Tex. App.—Austin 2006, no pet.) (*en banc* op. on reh'g)). Although "may" indicates that an action is within the discretion of *the actor*, the actor is not necessarily the trial court. *See id.* at 268–71 (concluding that the inclusion of

10

the phrase "may be foreclosed" in Property Code Section 53.154 did not grant a trial court discretion to deny a lienholder a judgment foreclosing a valid mechanic's lien because the trial court is not the actor indicated in the statute); *see also Roth v. Dist. of Columbia Courts*, 160 F. Supp.2d 104, 109 (D.D.C. 2001) ("May is most commonly used to indicate that an action is . . . in the discretion *of the actor*." (emphasis added)). Thus, the inclusion of the word "may" in Section 53.157 is not alone sufficient to show that the statute grants a trial court discretion regarding the discharge of a lien. Indeed, the statute's grammatical structure and the context in which "may" is used strongly suggest otherwise. *See* Tex. Gov't Code Ann. § 311.016(1) (providing that "may" is ordinarily to be construed as "creat[ing] discretionary authority or grant[ing] permission or a power" but recognizing that "the context in which the word . . . appears" may "necessarily require[] a different construction").

Section 53.157 is written in the passive voice, meaning that the subject ("[a] mechanic's lien or an affidavit claiming a mechanic's lien") does not perform the action of the verb but rather receives it ("may be discharged of record"). *See Crawford Servs., Inc.*, 444 S.W.3d at 269–70 (citing The Chicago Manual of Style ¶ 5.112 (15th ed. 2003)). A passive-voice sentence typically includes a "by" prepositional phrase to identify the actor. *Id.* at 270 (citing *Aaron Rents*, 212 S.W.3d at 681 (Patterson, J., dissenting)). However, while Section 53.157 includes a "by" phrase, as discussed in greater detail below, this "by" phrase describes only the various means by which a mechanic's lien "may be discharged of record" and does not expressly identify the actor. *See By,*

11

Merriam-Webster.com, https://www.merriam-webster.com/dictionary/by (last visited Jan. 4, 2024) (defining "by" to mean, *inter alia*, "through the agency *or instrumentality* of" (emphasis added)). Accordingly, we must look to the context to determine the actor in the statute. *See Crawford Servs., Inc.*, 444 S.W.3d at 270.

In Section 53.157, the first word after the verb phrase "may be discharged of record" is "by," which, in turn, is followed by a colon introducing subparts (1) through (6). Tex. Prop. Code Ann. § 53.157. Each of these subparts begins with a present participle and describes an act that will discharge a mechanic's lien:

(1) *recording* a lien release . . . ;
(2) *failing* to institute suit . . . ;
(3) *recording* . . . a final judgment . . . providing for the discharge;
(4) *filing* the bond . . . in compliance with Subchapter H;
(5) *filing* the bond in compliance with Subchapter I; or
(6) *recording* a certified copy of the order removing the lien . . . .

*Id.* (emphasis added). Significantly, none of these acts are performed by—or even directly involve—a trial court. Rather, recording a document, failing to institute suit, and filing a bond are all actions that property owners, lienholders, or other parties involved in the mechanic's lien process perform. Thus, taken as a whole, Section 53.157 makes clear that the trial court is not the relevant actor.

Therefore, a straightforward reading of the statute indicates that a lien is discharged of record when any one of the events listed in subparts (1) through (6) occurs; the discharge is not conditioned on a trial court's approval. This interpretation makes practical sense. If the triggering events merely granted a trial court

12

the discretion to discharge a lien, they would not always result in a discharge. This would introduce uncertainty into the mechanic's lien enforcement process, hindering Chapter 53's purpose. *See Crawford Servs., Inc.*, 444 S.W.3d at 271.

Because the context surrounding the verb phrase "may be discharged" makes clear that the trial court is not the actor in Section 53.157, we conclude that the statute did not grant the trial court discretion to discharge BFS's lien. *See id.* at 270–71. Rather, BFS's failure to timely institute suit to foreclose its lien in the county in which the property is located automatically discharged its lien. *See* Tex. Prop. Code Ann. § 53.157(2).

## C. BFS's Discharged Lien Is Unenforceable

Citing our decision in *Pineridge Associates, L.P. v. Ridgepine, LLC*, 337 S.W.3d 461, 466 (Tex. App.—Fort Worth 2011, no pet.), BFS argues that even if its lien has been discharged, it is nevertheless enforceable. This argument does not even pass the "red face" test.[6] *Cf. In re Pilgrim's Pride Corp.*, 439 B.R. 661, 668 n.11 (Bankr. N.D. Tex. 2010) (rejecting statutory construction that was "so patently absurd as to not pass the 'red face' test").

---

[6]A plausible argument is one that passes the "red face" test. *See Aguirre v. State*, 402 S.W.3d 664, 668 n.13 (Tex. Crim. App. 2013) (Cochran, J., concurring). In other words, one must be able to advance the argument "responsibly without one's face turning red or blushing with embarrassment." *Id.*

*Pineridge* involved a dispute between a mortgagee and a property owner about whether the property owner was personally liable for the indebtedness. *See Pineridge Assocs., L.P.*, 337 S.W.3d at 463–64. The loan was nonrecourse, but the note provided that the property owner would become personally liable for the debt upon the occurrence of an "[e]vent of [d]efault" under the deed of trust, including the perfection of an unauthorized lien or encumbrance on the mortgaged property. *Id.* at 464. However, the deed of trust included an exception clause stating that "the creation of a mechanic's, materialman's, or judgment lien against the [m]ortgaged [p]roperty which is released of record or otherwise remedied to [the mortgagee's] satisfaction within 30 days of the date of creation" was not an "[e]vent of [d]efault" that would trigger the property owner's personal liability. *Id.* Numerous mechanic's liens had been filed against the mortgaged property, but they had been extinguished when the mortgagee foreclosed its superior lien. *Id.* at 463, 466. Following the foreclosure sale, the mortgagee sued the property owner for the deficiency. *Id.* at 464. The property owner argued that it was not personally liable for the loan because the foreclosure sale had effectively caused the mechanic's liens to be "released of record." *Id.* at 464–65. We rejected the property owner's argument and held that, under the relevant deed-of-trust language, "the mechanic's liens were not automatically released of record when they were extinguished through the foreclosure sale." *Id.* at 468.

Our holding in *Pineridge* that a mechanic's lien's being "extinguished" through the foreclosure of a superior lien was not the same as its being "released of record" in

14

no way supports the proposition that a discharged mechanic's lien is enforceable. Indeed, the *Pineridge* appellants' argument that the foreclosure sale had effectively released the mechanic's liens of record was based on the fact that the foreclosure sale had rendered the liens *unenforceable. See id.* ("[E]ven though the extinguishment through foreclosure rendered the mechanic's liens unenforceable, the contract language does not support [a]ppellants' contention that extinguishing the mechanic's liens through the foreclosure sale is synonymous with the liens being released of record."). Thus, our opinion in *Pineridge* tacitly, if not overtly, recognizes that discharging[7] a mechanic's lien of record renders it unenforceable. *See id. at* 466–68. BFS cites no other authority to support its contention that a discharged mechanic's lien can be enforced, and we reject this baseless proposition. *See Apex Fin. Corp. v. Brown*, 7 S.W.3d 820, 830 (Tex. App.— Texarkana 1999, no pet.) ("[A] statutory mechanic's lien will not be enforceable if it has been discharged . . . ." (citing Tex. Prop. Code Ann. § 53.157)); *see also Roberts v. Dixon*, No. 12-15-00181-CV, 2016 WL 900205, at *2 (Tex. App.—Tyler Mar. 9, 2016, no pet.) (mem. op.) (recognizing that "[a] mechanic's lien . . . may be discharged of record by recording a release of lien" and that "[a] release of lien . . . is, until set aside, a complete bar to any action by the former lienholder based on matters covered and discharged by the release" (first citing Tex. Prop. Code Ann. § 53.157(1); and then citing *MBank El*

---

[7]"'[D]ischarge' and 'release' are synonymous." *Id.* at 466 n.5 (citing Black's Law Dictionary 530, 1403 (9th ed. 2009)).

*Paso Nat'l Ass'n v. Featherlite Corp.*, 792 S.W.2d 472, 476 (Tex. App.—El Paso 1990, writ denied))).

Because BFS's mechanic's lien has been discharged of record and is therefore unenforceable, we sustain the Tharps' first issue. Having sustained the Tharps' first issue, we overrule their second issue as moot. *See* Tex. R. App. P. 47.1.

### III. CONCLUSION

Having sustained the Tharps' dispositive issue, we reverse the trial court's summary judgment and render judgment dismissing BFS's lawsuit.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: January 11, 2024